Betsy Glenn Cates appeals from a Chilton Circuit Court order denying her request to close her guardianship. Betsy's guardians are her children, Elizabeth C. Cates and Glenn C. Cates.
In February 1998, Elizabeth and Glenn initiated a consolidated guardianship and conservatorship proceeding as to Betsy in the Chilton Probate Court. See Ala. Code 1975, § 26-2A-31(d). Elizabeth and Glenn alleged that Betsy was an incapacitated person, and they requested that the probate court appoint them as Betsy's guardians and conservators. In conjunction with the guardianship and conservatorship proceeding, a neurologist who had recently examined Betsy issued a letter stating:
 "I have had the pleasure of caring for . . . Betsy . . . since November 4, 1997. At that time she presented for evaluation of cognitive decline. She underwent full evaluation for this, with indepth neuropsychological assessment. This revealed a mild to moderate dementia. She was found to be severely *Page 799 
impaired in handling basic monetary skills, financial conceptual knowledge, management of a checkbook, and financial judgment. She was mildly impaired in conducting small cash transactions and had a moderate impairment in managing a bank statement.
 "It is currently my opinion that [Betsy] is no longer able to make appropriate judgments regarding monies or properties. Further, as I suspect that she has either Alzheimer's disease and/or frontal lobe dementia, I suspect that this will be progressive and that she will not improve to the point that she will ever be able to do this. I believe that this is a permanent impairment. It is my medical opinion that someone other than [Betsy] should be handling her financial decisions and property decisions."
Betsy was 73 years old when the neurologist examined her' in November 1997.
In May 1998, after an evidentiary hearing, the probate court entered an order appointing Elizabeth and Glenn as Betsy's guardians and conservators. The order required Elizabeth and Glenn to file biannual accountings as to Betsy's conservatorship estate. Thereafter, upon Elizabeth's and Glenn's posting of bond, the probate court issued letters of conservatorship and guardianship to them.
In May 2003, unbeknownst to Elizabeth and Glenn, Betsy married Mack Jones. Thereafter, Jones allegedly attempted to control some of Betsy's assets and to restrict Betsy's contact with Elizabeth and Glenn. After Elizabeth and Glenn discovered that Betsy had married Jones, they filed an action in the Chilton Circuit Court seeking an annulment of the marriage.See Ala. Code 1975, §§ 26-2A-78(c)(5) and26-2A-108.
In February 2004, while the annulment proceeding was pending in the circuit court, Betsy and Jones, who considered himself a "person interested in the welfare" of Betsy,see Ala. Code 1975, § 26-2A-144(a), filed a "Petition for Review" in the probate court alleging that Elizabeth and Glenn had engaged in self-dealing and that they had breached the standard of care applicable to conservators. Betsy and Jones requested that the probate court order Elizabeth and Glenn to file a full accounting of the conservatorship administration.
In May 2004, Betsy filed a "Motion to Close Conservatorship" in the probate court. Betsy's guardian ad litem promptly filed an objection to her motion, attaching a letter from the aforementioned neurologist, who had reexamined Betsy in March 2004 in conjunction with the pending annulment proceeding. The neurologist's 2004 letter stated, in part, that Betsy was "suffering from Alzheimer's disease." The neurologist concluded that Betsy "should not be making decisions regarding self, properties or finances" and that "she will never be able to make these types of decisions given that Alzheimer's disease is progressive." The guardian ad litem also attached a copy of a report of a neuropsychological examination of Betsy that had been ordered by the circuit court. The examination report reflected that Betsy was "not currently able to manage her financial affairs" and that she was "in the severely impaired range" on the "Financial Capacity Instrument." Also, the examination report reflected that Betsy had "significant deficits in the cognitive domains of memory, abstract reasoning, expressive language, and executive functioning," that she was "highly vulnerable to undue influence," and that she "would have lacked capacity" to marry Jones when they married. In addition to the guardian ad litem's objection to Betsy's motion seeking to close the conservatorship, Elizabeth and Glenn filed a motion in *Page 800 
opposition to Betsy's motion, and they filed a motion requesting that they be provided with additional time to submit an accounting as to Betsy's conservatorship estate.
Also in May 2004, the circuit court entered a final judgment in the annulment proceeding. The judgment stated that Betsy "lacked the capacity to enter into a valid marital contract in May 2003," and it annulled her marriage to Jones. Thereafter, Elizabeth and Glenn obtained a writ of possession from the Chilton District Court as to certain real property that Jones occupied and that belonged to a trust that had been established for Betsy's benefit by Betsy's former husband, Elizabeth's and Glenn's father.
In early September 2004, before the probate court held a hearing on Betsy's motion to close the conservatorship, Elizabeth and Glenn filed a new action in the circuit court alleging that Jones had wrongfully interfered with their custody rights as to Betsy and that Jones had wrongfully detained several items of personal property that belonged in the conservatorship estate. Elizabeth and Glenn requested that the circuit court enter an ex parte order restoring Betsy to their physical custody, that it enter a temporary re-straining order prohibiting Jones from interfering with their custodial rights, and that it enter a permanent injunction enjoining Jones from interfering with their custodial rights. Also, Elizabeth and Glenn requested that the circuit court award them $50,000 as damages for emotional distress and punitive damages for Jones's allegedly wrongful interference their custodial rights. They further sought recovery of the wrongfully detained personal property or its equivalent value plus "damages for detention in the sum of $5,000."
After Elizabeth and Glenn filed their action, the circuit court immediately issued an ex parte pickup order requesting that the local sheriff retrieve Betsy and deliver her into Elizabeth and Glenn's physical custody. The circuit court also issued a restraining order against Jones "to prohibit [him] from interfering with [Elizabeth and Glenn's] lawful right to have the physical custody of their mother and ward" "until further order of this Court."
Also in September 2004, Betsy filed a motion in the probate court requesting that it terminate her guardianship and conservatorship, and she again requested an accounting from Elizabeth and Glenn. See Ala. Code 1975, §§26-2A-110(a) and 26-2A-158(a). Thereafter, on motion of Elizabeth and Glenn, Betsy's guardianship and conservatorship proceeding was removed from the probate court to the Chilton Circuit Court.See Ala. Code 1975, § 26-2-2. The circuit court apparently consolidated the guardianship and conservatorship proceeding into Elizabeth and Glenn's pending action against Jones; all of the proceedings utilize the same circuit court case number.
In November 2004, Betsy filed a motion in the circuit court requesting that the "conservatorship be closed and the appointed guardians be removed." Thereafter, Jones filed a motion to set aside the circuit court's restraining order.
In December 2004, the circuit court conducted an ore tenus proceeding as to whether to "terminate" Betsy's guardianship, after which it took the guardianship matter under advisement and retained jurisdiction over the "issue of conservatorship."
In February 2005, the circuit entered an order denying the petition to terminate the guardianship, stating that "the Ward cannot perform the tasks of daily living and caring for herself and that "the Letters of *Page 801 
Guardianship shall remain in place with the present Guardians." The order did not purport to address whether the conservatorship should continue, nor did it purport to address the requested accounting or Elizabeth and Glenn's claims against Jones.
Betsy appealed to this court. This court transferred Betsy's appeal to the Alabama Supreme Court on jurisdictional grounds. The Supreme Court transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6). We do not address the merits of Betsy's appeal because it must be dismissed as being from a nonfinal judgment.
Although neither party has questioned this court's jurisdiction, we must consider whether we have jurisdiction over this appeal, because "`jurisdictional matters are of such magnitude that we take notice of them at any time and do so evenex mero motu.'" Wallace v. Tee Jays Mfg. Co.,689 So.2d 210, 211 (Ala.Civ.App. 1997) (quoting Nunn v.Baker, 518 So.2d 711, 712 (Ala. 1987)). The question whether a judgment is final is a jurisdictional question. The reviewing court, on a determination that the judgment is not final, has a duty to dismiss the appeal; if the appellee has not moved for a dismissal, then the court should dismiss the appeal on its own motion. See Jim Walter Homes, Inc. v. Holman,373 So.2d 869, 871 (Ala.Civ.App. 1979).
The Alabama Uniform Guardianship and Protective Proceedings Act, Ala. Code 1975, § 26-2A-1 et seq., states, "[u]nless specifically provided to the contrary in this chapter or inconsistent with its provisions, the rules of civil procedure . . . and appellate review govern proceedings under this chapter." Ala. Code 1975, § 26-2A-33. Also, Ala. Code 1975, § 26-2A-36, states that "[a]ppellate review, including the right to appellate review, interlocutory appeal, [and] provisions as to . . . power of the appellate court, is governed by Title 12, Chapter 22, and the Alabama Rules of Appellate Procedure, as applicable."
Section 12-22-2, Ala. Code 1975, provides that a party may appeal "[f]rom any final judgment of the circuit court . . . to the appropriate appellate court." A "final judgment is a `terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants.'" Dees v. State, 563 So.2d 1059, 1061
(Ala.Civ.App. 1990) (quoting Tidwell v. Tidwell,496 So.2d 91, 92 (Ala.Civ.App. 1986)). A ruling that relates to fewer than all the parties in a case, or that determines fewer than all the claims, is ordinarily not final as to any of the parties or as to any of the claims. Rule 54(b), Ala.R.Civ.P.;see also McGlothlin v. First Alabama Bank, 599 So.2d 1137
(Ala. 1992).
Because the circuit court's February 2005 order determines fewer than all the claims in the present case, the judgment appealed from is not final. Accordingly, we must dismiss the appeal.[1]
APPEAL DISMISSED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.
[1] It appears that the issues as to the conservatorship and the requested accounting substantially overlap the issues as to the guardianship. Under the circumstances, a Rule 54(b), Ala. R. Civ. P., certification would likely be inappropriate as to the February 2005 order. *Page 802